UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| PHILLIP A. COLLINS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:08-CV-122 RM |
| | ) | |
| AMERICA'S SERVICING CO., | ) | |
| | ) | |
| Defendant | ) | |

OPINION and ORDER

This cause comes before the court on America's Servicing Company's motion for summary judgment on Phillip Collins' complaint, in which he claims in Count I that America's Servicing violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), in Count II that America's Servicing violated Indiana's Home Loan Practices Act, IND. CODE § 24-9-1-1 *et seq.*, and in Count III that America's Servicing engaged in pyramiding of late fees in violation "of both federal and state law, particularly, [Indiana Code] § 24-4.5-3-204."[1] America's Servicing is entitled to summary judgment.

---

[1] The court denied Mr. Collins' further request in Count IV of his complaint that he permitted to pursue his claims as a class action in April 2009.

FACTS

Phillip Collins secured financing from WMC Mortgage Company in August 2004 for his purchase of a home in Lowell, Indiana. The terms of the Adjustable Rate Note and Mortgage documents provided that Mr. Collins' mortgage payments were due on the first of each month, and a late fee would be imposed on the sixteenth of any month when the monthly installment hadn't been received on or before the expiration of the fifteen-day grace period. WMC assigned the servicing of Mr. Collins' mortgage to America's Servicing, which was to manage the account according to the original loan documents' terms. Mr. Collins submitted his payments and directed inquiries about his mortgage loan to America's Servicing.

In November 2006, Mr. Collins was undergoing financial difficulties, so he contacted America's Servicing to request that his loan payments be restructured. He spoke by telephone with an America's Servicing customer service representative named Christina and entered into an agreement that would allow him to forego making his November payment and, instead, spread the November installment over the next eight months, from December 2006 through July 2007. That forbearance agreement also provided that Mr. Collins would make his payments on the fifteenth, rather than the first, of each month. Mr. Collins says he understood that if his payments were made by the thirtieth of each month (based on a fifteen-day grace period), no late fee would be charged and no negative reports would be made to any credit reporting agency. Mr. Collins entered into a second forbearance agreement in April 2007 that allowed him to make his

2

monthly payments on the twenty-seventh, rather than the fifteenth, of each month. According to Mr. Collins, the forbearance agreements were supposed to protect his credit rating and prevent him from accruing late fees.

Mr. Collins sought to refinance his home in August 2007 when the interest rate on his loan was increased. Mr. Collins discovered during that refinancing process that late fees had been imposed and negative credit reports were made during the effective time of the forbearance agreements. He wrote to America's Servicing on August 31, 2007, asking the company to remove the late fees from his account and retract the negative reports made to credit agencies. In response, America's Servicing informed Mr. Collins that no corrective would be taken because its actions — assessing late fees and reporting that his account was past due — weren't erroneous.

Mr. Collins couldn't refinance his home because of his poor credit history; when he became unable to afford the increased monthly payments, his home became subject to foreclosure proceedings. As a result, he filed suit against America's Servicing claiming that the company had violated the Cranston-Gonzalez amendments to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) & (f), and Indiana's Home Loan Practices Act, IND. CODE § 24-9-1-1 *et seq.*, and had engaged in pyramiding of late fees in violation "of both federal and state law, particularly, [Indiana Code] § 24-4.5-3-204." Mr. Collins seeks actual, consequential, and statutory damages, costs, and fees.

America's Servicing says Mr. Collins can't succeed on any of his claims and has moved for summary judgment on Counts I-III of his complaint.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must construe the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party, here, Mr. Collins. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." 477 U.S. at 251-252 (1986). But the existence of a factual dispute alone doesn't defeat a properly supported summary judgment motion — the disputed factual issue must be material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *See* Anderson v. Liberty Lobby, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). The proper inquiry, then, is "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." 477 U.S. at 250. The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

Discussion

*Federal Claim*

"Congress enacted [the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*,] to insure consumers are provided with information regarding the nature and costs of servicing their home loans. RESPA allows consumers to obtain information about their residential mortgages and penalizes companies which do not comply. RESPA governs how and when a loan servicer must respond to a borrower's complaints about the servicing of the loan." In re Payne, 387 B.R. 614, 633 (Bankr. D.Kan. 2008); *see also* In re Hopkins, 372 B.R. 734, 746 (Bankr. E.D. Pa. 2007) (RESPA "provides for individual causes of action and allows for actual damages, as well as statutory damages upon a showing of a pattern or practice of noncompliance with the duty to respond to borrower inquiries.").

5

Mr. Collins alleges in Count I of his complaint that he made a qualified written request[2] to America's Servicing on August 31, 2007, asking that all late fees assessed to his account from November 1, 2006 through August 1, 2007 be refunded to him and that America's Servicing notify credit agencies that the mortgage payments he made during that time period were timely. Compl., Exh. E. America's Servicing was required to do one of three things within sixty days of receiving Mr. Collins' request: (1) correct his account and inform him of those corrections in writing; (2) investigate and provide Mr. Collins with a written explanation of the reasons the company believed his account to be correct; or (3) investigate and provide Mr. Collins with a written explanation of the reasons the company wasn't able to obtain the information he was requesting. 12 U.S.C. § 2605(e)(2). Also, during the sixty day period, America's Servicing was prohibited from providing information to any consumer reporting agency about overdue payments on Mr. Collins' account. 12 U.S.C. § 2605(e)(3). Mr. Collins claims America's Servicing violated the statute when it denied his request and failed to correct his account.

America's Servicing maintains it can't be liable under RESPA because it provided Mr. Collins with a proper and timely response to his inquiry. America's

---

[2] A qualified written request "shall be a written correspondence . . . that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower, and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). America's Servicing hasn't argued that Mr. Collins' August 31, 2007 letter wasn't a "qualified request."

6

Servicing says that while Mr. Collins claims the company violated the Act by refusing "to make the necessary corrections" to his account, the statute doesn't require that corrections be made if the servicer "believes the account of the borrower is correct." 12 U.S.C. § 2605(e)(2)(B). America's Servicing explains that it disagreed with Mr. Collins's claim that late fees had been assessed in error, so, on September 25, the company provided him with a written explanation as to why the imposition of late fees wasn't in error and information about contacting the company for further assistance. According to America's Servicing, its September 25 letter was in compliance with the requirements of 12 U.S.C. § 2605(e)(2)(B)(i) and (ii). America's Servicing says, too, that Mr. Collins hasn't produced any evidence to support his claim that the company continued to report his late fees to credit agencies during the sixty-day period following its receipt of his inquiry.

Mr. Collins has offered no response to America's Servicing's argument that the company's written disagreement with his request to refund the late fees collected on his mortgage was timely and proper under the statute, nor has he presented any evidence showing that America's Servicing wrongfully made reports to credit bureaus during the relevant time period. Mr. Collins hasn't established that America's Servicing's actions violated any provision of the Real Estate Settlement Procedures Act, so America's Servicing is entitled to summary judgment on Count I.

*State Law Claims*

Mr. Collins premises his remaining claims on his assertion that America's Servicing breached the parties' contracts, engaged in deceptive acts in violation of Indiana's Home Loan Practices Act, specifically Indiana Code § 24-9-2-7, and wrongfully pyramided late fees in violation of Indiana Code § 24-4.5-3-204.[3] When, as here, all federal claims are dismissed before trial, the court may decline to exercise supplemental jurisdiction over related state law claims if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c); *see also* Hansen v. Board of Trustees of Hamilton Southeastern School Corp., 551 F.3d 599, 607 (7th Cir. 2008) ("the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)"); Timm v. Mead Corp., 32 F.3d 273, 277 (7th Cir. 1994) ("That the jurisdictional hook is eliminated before trial at best only preliminarily informs the balance; the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources can and should make the difference in a particular case."). "But while a district court may relinquish its supplemental

---

[3] Mr. Collins also claimed in Count III that the pyramiding of late fees violates "federal law," *see* Compl., ¶ 51, but neither his complaint nor his summary judgment response contain any citation to any federal statute or case law that would support a finding that America's Servicing's actions in this regard violated federal law.

8

jurisdiction if one of the conditions of § 1367(c) is satisfied, it is not required to do so. Supplemental jurisdiction is a doctrine of discretion, and its justification lies in considerations of judicial economy, convenience and fairness to litigants." Hansen v. Board of Trustees, 551 F.3d at 607 (internal citations and quotations omitted).

This case is at the summary judgment stage, discovery is complete, and a trial is scheduled for next month. Thus, considerations of judicial economy and fairness to the litigants weigh in favor of this court's continued exercise of supplemental jurisdiction and consideration of Mr. Collins' state law claims.

*(1) Breach of Contract*

America's Servicing maintains it didn't pyramid late fees or improperly report the status of his loan to any credit agency and so didn't breach the terms of any of its contracts with Mr. Collins. America's Servicing says the terms of both the mortgage loan documents and the forbearance agreements support its position. According to America's Servicing, the mortgage contract provides that payments are due on the first of every month, Deft. Exh. C (Adjustable Rate Note), at 1; imposition of a late fee is permitted if the full amount of a monthly payment isn't received before the end of a fifteen-day grace period, Deft. Exh. C (Adjustable Rate Note), at 2; and when a payment is received, it is to be applied "in the order in which it became due." Deft. Exh. C-1 (Mortgage), at 3. America's Servicing says that when Mr. Collins' payment was late or when he missed a payment for any

9

month, he was charged one late fee for that missed payment, and when payments were received from Mr. Collins, the moneys were applied in the order they became due. America's Servicing explains that when Mr. Collins was more than thirty days behind in his payments, the payments he made were applied to the past due balance and late fees resulted because the payments were untimely. America's Servicing says its imposition and reporting of late fees was proper under the terms of the mortgage contract.

America's Servicing says imposition and reporting of late fees on Mr. Collins's account was proper under the forbearance agreements' terms, as well. America's Servicing notes that the forbearance agreements didn't change the terms of mortgage contract, *see* ¶ 4 ("All of the provisions of the Note and security instrument . . . shall remain in full force."); required all payments to be made on the agreed date, *see* ¶ 2 ("There is no 'grace period' allowance in this Agreement."); and allowed credit reporting to continue, *see* ¶ 5 ("The contractual due date of your loan will continue to be reported to the credit bureaus on a monthly basis. While this Agreement is in effect, there may be special notation: 'Paying under a partial payment Agreement.'"). America's Servicing says the forbearance agreements' plain language permitted it to impose late fees and make reports to credit agencies during the effective periods of those agreements.

Mr. Collins responds that imposition of late fees contravened his agreement with America's Servicing, which, he says, modified the amount and due date of his payments. He claims that under the terms of the November 2006 and April 2007

forbearance agreements, America's Servicing "could not charge a late fee if [he] made his monthly mortgage payment within 15 days after the 'date it is due.' In the case of the forbearance agreement of November 1, 2006, the deadline for [him] to avoid the payment of a late fee would have been the 30th of each month because the payment due date was the 15th of the month. That date would, of course, [be] extended into the next month as the result of the April 13, 2007 forbearance agreement." Resp., at 7. Mr. Collins is mistaken. His claim that a grace period applied to the forbearance agreements ignores the plain language of paragraph 2 the agreements, which states that there is "no grace period," and testimony by both Mr. Collins and Mrs. Collins that they understood the forbearance agreements didn't include a grace period. *See* P. Collins Dep., at 23; D. Collins Dep., at 11-12. Thus, to be timely, payments under the November 2006 agreement were due on or before the fifteenth of each month and payments under the April 2007 agreement were due on or before the twenty-seventh of each month.

Mr. Collins next complains that when he made a payment, America's Servicing applied the payment first to any payment he had missed. According to Mr. Collins, that practice "is, of course, contrary to the specific contractual language reached between the parties in the forbearance agreements." Resp., at 7. Mr. Collins, though, doesn't cite to the "specific contractual language" upon which he relies. The forbearance agreements state that "[a]ll of the provisions of the Note and security instrument, except as herein provided, shall remain in full

11

force and effect," Pltf. Exh. F, p. 2, ¶ 4, and the mortgage document specifies that "payments shall be applied to each Periodic Payment in the order in which it became due." Deft. Exh. C-1, p. 3, ¶ 2. Mr. Collins hasn't pointed to any provision of the forbearance agreements that changed the requirement that payments be applied first to any arrearage, nor has he cited any legal support for a finding that the forbearance agreements contain an exception to that specific mortgage term. While Mr. Collins complains that "according to ASC's recordkeeping, [he] would never be timely with his payments until the missed mortgage payment was brought current," Resp., at 7, he hasn't demonstrated that America's Servicing's record-keeping in this instance was improper or contrary to the applicable contract terms.

Mr. Collins also claims late fees shouldn't have been assessed during the period of the forbearance agreements because "he was never late with a payment." Resp., at 7. Contrary to Mr. Collins' claim, America's Servicing has provided evidence showing the following payment history on his account:

| Month | Due date (grace period) | Pymt rec'd | Pymt applied to | Late fee imposed? |
|---|---|---|---|---|
| Jan 06 | 1-1 (15) | 1-20-06 | Jan 06 | yes |
| Feb 06 | 2-1 (15) | 2-7-06 | Feb 06 | no |
| Mar 06 | 3-1 (15) | 3-6-06 | Mar 06 | no |
| Apr 06 | 4-1 (15) | 4-6-06 | Apr 06 | no |
| May 06 | 5-1 (15) | 5-10-06 | May 06 | no |
| June 06 | 6-1 (15) | | | |
| July 06 | 7-1 (15) | 7-21-06 | June 06 | yes |

| Aug 06 | 8-1 (15) | 8-4-06 | July 06 | yes |
| Sept 06 | 9-1 (15) | 8-16-06 | Aug 06 | yes |
| Oct 06 | 10-1 (15) | | | |
| **Nov 06*** | [spread out] | 11-2-06 | Sept 06 | yes |
| **Dec 06*** | 12-15 | 12-15-06 | Oct 06 | yes |
| **Jan 07*** | 1-15 | 1-12-07 | Nov 06 | yes |
| **Feb 07*** | 2-15 | 2-15-07 | Dec 06 | yes |
| **Mar 07*** | 3-15 | 3-16-07 | Jan 07 | yes |
| **Apr 07*** | 4-27 | 4-30-07 | Feb 07 | yes |
| **May 07*** | 5-27 | 5-25-07 | Mar 07 | yes |
| **June 07*** | 6-27 | 6-28-07 | Apr 07 | yes |
| **July 07*** | 7-27 | 7-30-07 | May 07 | yes |
| Aug 07 | 8-1 (15) | 8-30-07 | June 07 | yes |
| Sept 07 | 9-1 (15) | 9-17-07 | July 07 | yes |

*forbearance agreements in effect
Deft. Exh. D (Dzura Aff.), at Exhs. 1 & 2.

As shown by this table, Mr. Collins was two months in arrears when the first forbearance agreement became effective. When he tendered a payment in November, the money was applied in the order it became due, that is, to the balance due from September. Mr. Collins's September payment was made in November, making the September payment untimely, and a late fee was assessed. Mr. Collins' account wasn't brought current during the period of either forbearance agreement, resulting in imposition of a late fee during those months. America's Servicing's evidence also establishes that only one late fee per month was assessed: the payments Mr. Collins made in July and September 2006, March and April 2007, and from June through September 2007 were late because they

13

were applied to the arrearage and were also late because they were tendered past their due dates, yet Mr. Collins was assessed only one late fee for each month.

Mr. Collins hasn't challenged America's Servicing's evidence or presented any contrary evidence.[4] He hasn't established that America's Servicing breached any provision of the mortgage documents or the forbearance agreements, and America's Servicing is entitled to summary judgment on his breach of contract claim.

*(2) Violation of Indiana Code § 24-9-2-7*

To prevail on his claim under the Indiana Home Loan Practices Act, Mr. Collins must prove that America's Servicing (1) knowingly[5] or intentionally, (2) made a material misrepresentation, or (3) concealed material information regarding the terms or conditions of the transactions. IND. CODE § 24-9-2-7(a). Before bringing an action regarding an alleged deceptive act, a person must (1) notify the homeowner protection unit established by Indiana Code § 4-6-12-2 of the alleged violation giving rise to the action, and (2) allow the homeowner protection unit at least ninety days to institute appropriate administrative and civil action to redress a violation. IND. CODE § 24-9-5-4(e).

---

[4] Mr. Collins cites to certain pages of the deposition of Jaime Walls, Pltf. Exh. C, as support for his claim that the payments he made under the forbearance agreements were timely, *see* Resp., at 4, but the pages upon which he relies weren't included in his summary judgment submission.

[5] "Knowingly" means "having actual knowledge at the time of the transaction." IND. CODE § 24-9-2-7(b).

14

Mr. Collins says he complied with the pre-litigation requirements of Indiana Code § 24-9-5-4(e), as shown by the affidavit of Dita Collins, who states that she notified the Homeowner's Protection Unit of the Indiana Attorney General's Office of what she described as America's Servicing's misconduct in servicing the mortgage. Pltf. Exh. E (D. Collins Aff.), ¶¶ 5-8. Mr. Collins next says that he and America's Servicing agreed in the forbearance agreements to modify the amount of his mortgage payments and to change the due date for those payments from the first of each month to the fifteenth of the month (in first agreement) and then to the twenty-seventh of the month (in second agreement). According to Mr. Collins, America's Servicing's assessment of late fees was contrary to the agreements because "the late charge language of the contracts does not specify a specific date when the mortgage payment is due. It simply refers to the right of the lender to assess a late charge if the payment is more than 15 days late from whatever is the due date." Resp., at 10. The court can't agree.

The forbearance agreements specifically provide that all terms of mortgage contract documents were to remain in full force and effect, including the provision that payments were to be applied in the order they became due. The forbearance agreements specially state, and Mr. Collins testified he understood, that there was no "grace period" allowance in the agreement. Even if Mr. Collins had made all his payments under the forbearance agreements in a timely manner, the two-month arrearage in his account still meant that each payment he made during that time

was late, so imposition of a late fee was proper for each month an untimely payment was received.

Mr. Collins hasn't carried his burden of pointing to evidence sufficient to establish, under Indiana Code § 24-9-2-7(a), that America's Servicing knowingly or intentionally made a material misrepresentation or concealed material information regarding the terms or conditions of any of the forbearance agreements. America's Servicing is entitled to summary judgment on Count II of his complaint.

### *(3) Violation of Indiana Code § 24-4.5-3-204*

America's Servicing lastly argues that Mr. Collins can't succeed on his claim that the company violated Indiana Code § 24-4.5-3-204 because Mr. Collins hasn't produced any evidence showing that the company imposed a deferral charge on his account. As America's Servicing notes, subsection (1) of § 24-4.5-3-204 prohibits assessment of a late fee if a deferral charge has been imposed in connection with a forbearance agreement. America's Servicing says that because no deferral charge was imposed, imposition of late fees pursuant to the terms of the mortgage contract didn't violate the statute. Mr. Collins hasn't responded to America's Servicing's argument or produced any evidence that an improper deferral charge was added to his account. America's Servicing is entitled to summary judgment on Mr. Collins' claim that the company violated Indiana Code § 24-4.5-3-204.

CONCLUSION

For these reasons, the court GRANTS the motion of America's Servicing Company for summary judgment [docket # 54], VACATES the final pretrial conference set for August 10, 2010 and the trial date of August 30, 2010, DENIES as moot the motion to stay pretrial deadlines [docket # 62], and DIRECTS the clerk to enter judgment in favor of the defendant on all claims of the plaintiff's complaint.

SO ORDERED.

ENTERED: <u>  July 13, 2010  </u>

<u>  /s/ Robert L. Miller, Jr.            </u>
Judge
United States District Court